George Linardos, et al. [1] v. Commissioner.
Linardos v. Commissioner
Docket Nos. 85598, 89306, 92038, 92237, 93730, 94114, 94532, 94645, 94887, 95027, 95092, 95239, 95246, 95291, 95303, 122-62, 150-62, 185-62.
United States Tax Court
T.C. Memo 1964-210; 1964 Tax Ct. Memo LEXIS 126; 23 T.C.M. (CCH) 1265; T.C.M. (RIA) 64210; August 6, 1964
*126 Jerry Sklar, for the petitioner in Docket No. 85598. The other petitioners appeared pro se. Arthur S. O'Neill, for the respondent. MURDOCK [Memorandum Findings of Fact and Opinion] The Commissioner determined deficiencies in income tax as follows: Docket No.
(Petitioners)
1955
1956
1957
1958
85598
George Linardos
$335.00
$335.00
$544.00
89306
Sylvester L. Szabo and Dorothy Szabo
514.35
498.52
489.76
92038
Joseph Reisman and Mary [1] Reisman
304.08
303.49
318.59
92237
Ernest Schwartz
450.53
469.96
470.06
93730
John Poland
158.00
353.00
366.00
94114
Frank Pepitone
548.68
505.62
584.89
94532
Sol Levin and Sylvia Levin [2]
420.37
342.87
366.16
$369.44
94645
Alfredo Boccia
783.78
254.15
539.91
642.47
94887
Louis Ripple
453.82
465.84
485.59
95027
Louis Farbenblum
443.26
482.91
95092
Jack Lewis Estrin and Jean Estrin
663.71
671.57
476.11
570.53
95239
Christos Papaconstantinos
443.51
414.46
471.09
95246
Henry Lefeber
382.97
336.00
418.35
455.28
95291
Albert B. Sidel and Betha A. Sidel
336.35
318.00
340.00
354.00
95303
Eduardo Leyva and Maria Leyva
337.17
365.92
400.89
401.28
122-62
Albert DiFelice and Edith DiFelice
331.96
315.00
348.27
361.07
150-62
Paul Vogel
415.27
373.97
428.07
360.72
185-62
Gustav J. Hentrich
325.39
318.85
345.29
380.63
*127 The Commissioner also determined 5% additions to the tax for each year in all cases except those of Linardos and Szabo, in which he determined additions for fraud and later waived as to fraud and alleged negligence as to Linardos only. Findings of Fact Papaconstantinos filed his returns for the years involved herein with the director *128 of internal revenue for the district of Newark, New Jersey. All other petitioners filed their returns either in the Brooklyn or Manhattan districts of New York. All of the male petitioners worked at Lindy's Restaurant, Broadway at 51st Street, New York, New York. The Commissioner, in determining the deficiencies, added additional tip income to that reported in each case and for each year. No petitioner kept any record of tip income and each merely estimated the amounts of tip income reported. Neither Lindy's nor the petitioners kept any record showing the sales made by each waiter during a year. Each of the male petitioners was paid wages by Lindy's on the basis of $32 per 5-day week. Those who worked on any of 7 holidays were paid double for that day. Lindy's gave one or two weeks vacation with pay, depending upon length of service, but otherwise paid wages only for time worked. Waiters at Lindy's were rotated daily as to table locations. Front tables are regarded by waiters as somewhat better than rear tables, especially on days other than Wednesdays, Saturdays and holidays. Linardos seldom took his turn on front tables in order to avoid the longer walk. Waiters did not pool *129 their tips at Lindy's. The method used by the Commissioner in determining the amounts of tip income added to the amount of tips reported was not arbitrary or unreasonable under all of the circumstances of this case. Linardos spent $150 for drugs in each of the years 1955, 1956 and 1957. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioners have not proven and have not made any worth while effort to show what tips they actually received. Their principal contention seems to be that the Commissioner was arbitrary and unreasonable in making his determinations. They kept no record of their tips or of their sales. The Commissioner was thus fully justified in resorting to some reasonable method of determining their income from tips and, if he could not make an exact determination, they have no cause for complaint on that account. . It seems to be generally conceded here that a method based upon a percentage of sales is acceptable. The argument of the petitioners seems to focus on the Commissioner's use of 15% of sales as a starting point and upon his use of wages in allocating total *130 tips to individual waiters. These arguments may sound more valid than examination shows them to be. The Commissioner in his final figures did not use 15% restaurant total sales to represent average gross tips left by customers but instead used a much smaller percentage of sales. Fifteen percent of 1955 sales is $373,511. He deducted from that 10% for amounts paid bus boys by waiters. This was fair in view of his further computation and is not attacked here. He further reduced the $373,511 by adjustments totalling $50,224.60 to reach a result which would be fair to even the lowest tipped waiter. He had to divide the total tips thus determined among all of the tipped waiters. He could not do this on the basis of the table sales made by each waiter because the necessary records were not available. What method could he use? The total wages paid each waiter were all paid on a uniform basis and, therefore, the wages paid to each waiter (known amounts) would show the time worked by all waiters and under the circumstances a reasonable method was to assume that waiter sales bore a sufficient relation to waiter wages to allocate on the basis of a waiter's wages for the year. The above relates *131 to 1955 but the method was the same for all years and the result was to tax each waiter with 11.48% of his sales for 1955, 10.72% for 1956. 11.38% for 1957 and 11.15% for 1958. The attack on 15% of sales is inadequate since it is on the assumption that the average tip taxed was 15% and it fails to follow through to the percentage actually used in adding amounts to reported income which were based upon a much smaller percentage of sales. No better method of allocation than the one used has been suggested. The results reached do not appear to be unreasonable. There is no reason shown here to depart from the determinations thus reached. However, the Commissioner's final figures should be applied in the cases of Linardos, Szabo and Reisman, as they have been in the other 15 cases. There is also an issue in the Linardos case relating to payments for drugs. The Commissioner has conceded payments of $35 for each year but Linardos has testified to a much larger amount. He offered no corroboration for the amount he named as a minimum. Applying the rule of , the Court has concluded that the amount spent in each year for drugs was $150. The *132 negligence addition is at issue in all but the Szabo case and its imposition is proper in view of the evidence that no records were kept. ; . Decisions will be entered for the respondent in Docket Nos. 92237, 93730, 94114, 94532, 94645, 94887, 95027, 95092, 95239, 95246, 95291, 95303, 122-62, 150-62 and 185-62. Decisions will be entered under Rule 50 in Docket Nos. 85598, 89306 and 92038. Footnotes
1. Proceedings of the following petitioners were consolidated herewith for trial: George Linardos, Docket No. 85598; Sylvester L. Szabo and Dorthy Szabo, Docket No. 89306; Joseph Reisman and Mary Reisman, Docket No. 92038; Ernest Schwartz, Docket No. 92237; John Poland, Docket No. 93730; Frank Pepitone, Docket No. 94114; Sol Levin and Sylvia Levin, Docket No. 94532; Alfredo Boccia, Docket No. 94645; Louis Ripple, Docket No. 94887; Louis Farbenblum, Docket No. 95027; Jack Lewis Estrin and Jean Estrin, Docket No. 95092; Christos Papaconstantions, Docket No. 95239; Henry Lefeber, Docket No. 95246; Albert B. Sidel and Betha A. Sidel, Docket No. 95291; Eduardo Leyva and Maria Leyva, Docket No. 95303; Albert DiFelice and Edith DiFelice, Docket No. 122-62; Paul Vogel, Docket No. 150-62; Gustav J. Hentrich, Docket No. 185-62. ↩
1. Mary for 1956 only↩
2. Sylvia not as to 1955.↩